IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MALEEK BROWN,** | : | |
| *Plaintiff, Pro Se* | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **PHYSICIAN ASSISTANT** | : | |
| **JOHN NICHOLSON** *et al.*, | : | **NO. 18-3328** |
| *Defendants* | : | |

## MEMORANDUM

PRATTER, J.                                                                FEBRUARY ___, 2020

Maleek Brown claims that Physician's Assistant ("PA") John Nicholson violated his constitutional rights by misdiagnosing him and subjecting him to improper medical treatment during his incarceration at the State Correctional Institution at Chester ("SCI-Chester"). He also alleges that SCI-Chester's Corrections Health Care Administrator ("CHCA") Shirley Laws-Smith and Superintendent Marirosa Lamas violated his constitutional rights when they denied his related grievance and appeal. He brings claims under 42 U.S.C. § 1983 for violations of the Eighth Amendment against all three defendants in their official and individual capacities. The defendants move to dismiss Mr. Brown's complaint.

For the reasons below, the Court grants the motions to dismiss.

### BACKGROUND

Mr. Brown was an inmate at SCI-Chester when he began to suffer from a painful lump in the middle of his back. Mr. Brown believed that the lump was caused by a bullet trying to push itself out of his body and was seen by SCI-Chester's medical department on January 27, 2017. On that occasion, Mr. Brown alleges that PA Nicholson stuck a needle into his back, cut the lump, dug inside, told Mr. Brown he did not feel anything, and stitched the opening closed. PA

1

Nicholson informed Mr. Brown that the lump could be a fatty tissue growth called a lipoma, but stated he was not sure. He then sent Mr. Brown back to his block without any pain medication until the following week.

On February 5, 2017, Mr. Brown filed a grievance complaining that he was never given pain medication or antibiotics to ensure that the cut did not become infected, that neither PA Nicholson nor any of the nurses wore any surgical gear, and that he was not given an ultrasound, x-ray, or biopsy before being cut. He asked to be taken to an outside hospital to see a specialist so the lump could be diagnosed. CHCA Laws-Smith denied Mr. Brown's grievance on February 17, 2017, stating that he had received appropriate medical attention. Mr. Brown appealed the denial to Superintendent Lamas, who upheld the denial.

Mr. Brown subsequently sued PA Nicholson, CHCA Laws-Smith, and Superintendent Lamas under 42 U.S.C. § 1983 alleging violations of the Eighth Amendment.

## Procedural History

On November 27, 2018, CHCA Laws-Smith and Superintendent Lamas moved to dismiss Mr. Brown's complaint. Mr. Brown had moved for appointment of counsel just four days prior, a motion the Court granted on November 30, 2018 by ordering the Clerk of the Court to present the case for consideration consistent with the Prisoner Civil Rights Panel Program. The Court placed the case in suspense pending consideration.

On September 4, 2019, upon notice that Mr. Brown's case still had not been selected by a member of the Volunteer Attorney Panel, the Court ordered Mr. Brown's case removed from suspense. The Court also ordered Mr. Brown to respond to CHCA Laws-Smith's and Superintendent Lamas' motion to dismiss and for PA Nicholson to respond to Mr. Brown's complaint, both by September 27, 2019.

On September 13, 2019, PA Nicholson moved to dismiss Mr. Brown's complaint. That same day, the Court received a letter from Mr. Brown stating that he would like to continue his case and that, although he would prefer a lawyer, he was willing to proceed *pro se*. The September 27, 2019 deadline passed without Mr. Brown filing a response to CHCA Laws-Smith's and Superintendent Lamas' motion to dismiss.

On October 18, 2019, the Court ordered Mr. Brown to respond to both pending motions to dismiss no later than November 15, 2019, warning him that failure to do so may result in the Court considering the motions as unopposed. The November 15, 2019 deadline passed without Mr. Brown filing a response to either motion to dismiss.

On December 20, 2019, the Court gave Mr. Brown "a *final* opportunity" to respond to the motions to dismiss and ordered that any such response be filed no later than January 20, 2020. Dec. 20, 2019 Order (Doc. No. 32) (emphasis added). The Court again warned him that failure to respond may result in the Court considering the motions as unopposed. The January 20, 2020 deadline passed without Mr. Brown filing a response to either motion to dismiss.

Having given Mr. Brown every opportunity to respond to the defendants' motions to dismiss, the Court evaluates the merits of the motions without a response from Mr. Brown.

## LEGAL STANDARD

At the outset, the Court notes that Mr. Brown's *pro se* pleading will be "liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Bieros v. Nicola*, 839 F. Supp. 332, 334 (E.D. Pa. 1993) ("[A] court must construe *pro se* complaints liberally[.]"). *Pro se* litigants such as Mr. Brown are "held to 'less stringent standards' than trained counsel." *Benckini v. Hawk*, 654 F. Supp. 2d 310, 316 n.1 (E.D. Pa. 2009) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). The Court stands prepared to "apply the applicable law, irrespective of whether a *pro se*

3

litigant has mentioned it by name." *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999) (citations omitted).

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (alteration in original).

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation and internal quotation marks omitted). Thus, assessment of the sufficiency of a complaint is "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Pa. Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010).

In evaluating the sufficiency of a complaint, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). The Court must "accept all allegations as true." *ALA, Inc. v. CCAIR,*

*Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *see also Twombly*, 550 U.S. at 555 (stating that courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)"). A court must also accept as true all reasonable inferences emanating from the allegations, and view those facts and inferences in the light most favorable to the nonmoving party. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010).

That admonition does not demand that the Court ignore or discount reality. The Court "need not accept as true unsupported conclusions and unwarranted inferences." *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000) (citations and internal quotation marks omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions") (citations omitted). If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).

## DISCUSSION

"[S]ection 1983 does not in and of itself create or secure any substantive rights; it merely authorizes a cause of action when rights secured by another source have been infringed." *Gonzalez v. Young*, 560 F.2d 160, 168 (3d Cir. 1977), *aff'd sub nom. Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600 (1979). Therefore, to state a claim under Section 1983, Mr. Brown must show that each defendant was a person who, under the color of state law, caused a deprivation of his constitutional rights. *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985).

Mr. Brown has sued each defendant in their official and individual capacities, alleging that they committed violations of his Eighth Amendment rights. As explained in detail below, the Court dismisses the claims against the defendants in their official capacities because they are barred by the Eleventh Amendment and because Commonwealth defendants in their official capacities are not "persons" amenable to suit for damages under Section 1983. The Court also dismisses the remaining claims against the defendants in their individual capacities because Mr. Brown's allegations fail to state a violation of his constitutional rights.

## I. The Defendants Cannot be Sued in Their Official Capacities

"State governments and their subsidiary units are immune from suit in federal court under the Eleventh Amendment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 253 (3d Cir. 2010). "Individual state employees sued in their official capacity are also entitled to Eleventh Amendment immunity." *Id.* at 254. "Because the DOC is a part of Pennsylvania's executive department, its employees share in Eleventh Amendment immunity to the extent they are sued in their official capacities." *Turner v. Attorney Gen. Pennsylvania*, 505 F. App'x 95, 98 (3d Cir. 2012).

Mr. Brown's complaint states that all three defendants are employed by SCI-Chester. SCI-Chester is a state correctional institution under the umbrella of Pennsylvania's Department of Corrections, making PA Nicholson, CHCA Laws-Smith, and Superintendent Lamas employees of Pennsylvania's executive department. The Eleventh Amendment thus bars any claims against them in their official capacities.[1]

---

[1] The Eleventh Amendment does not bar prospective, injunctive relief. *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 697–98 (3d Cir. 1996) ("[R]elief that essentially serves to compensate a party injured in the past by the action of a state official, even though styled as something else, is barred by the Eleventh Amendment. On the other hand, 'relief that serves directly to bring an end to a present, continuing violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury.'") (quoting *Papasan v. Allain,* 478 U.S. 265, 278 (1986)).

Mr. Brown's complaint requests relief in the form of compensatory damages, punitive damages, and "[a] preliminary injunction and permanent injunction which . . . [r]equires the State Correction

"In addition to Eleventh Amendment immunity, the Commonwealth defendants in their official capacities are not considered 'persons' amenable to suit for damages under § 1983." *Mohamad v. Wenerowicz*, No. 13-3702, 2014 WL 2957445, at *5 (E.D. Pa. July 1, 2014) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 69–71, 71 n.10 (1989)).

For these reasons, the Court dismisses Mr. Brown's claims against PA Nicholson, CHCA Laws-Smith, and Superintendent Lamas in their official capacities. "A dismissal of a claim for lack of subject-matter jurisdiction is ordinarily a dismissal without prejudice." *Woodell v. Wenerowicz*, No. 18-1098, 2019 WL 4139264, at *9 n.32 (E.D. Pa. Aug. 30, 2019) (citing *In re Orthopedic "Bone Screw" Prod. Liab. Litig.*, 132 F.3d 152, 155 (3d Cir. 1997). Therefore, a dismissal based on Eleventh Amendment immunity should be made without prejudice. *Id.* (citations omitted). However, "insofar as the court dismisses these claims based on these defendants [in their official capacities] not being 'persons' amenable to suit under section 1983, these dismissals are with prejudice." *Id.*

## II. The Claims Against the Defendants in Their Individual Capacities Fail Under Federal Rule of Civil Procedure 12(b)(6)

Turning to Mr. Brown's claims against the defendants in their individual capacities, "[t]he first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying

---

Institution at Chester to turn over any and All Reprimands, Grievances, and Law Suits pertaining to all defendants." Compl. 13 (Doc. No. 1). Although it is unclear what injunctive relief Mr. Brown actually seeks, it is undisputed that Mr. Brown is no longer in state custody and is now housed at Federal Correctional Institute Ray Brook. Because Mr. Brown's complaint fails to identify what injunctive relief he seeks and he has been transferred to another facility where he cannot be in any imminent danger related to his treatment at SCI-Chester, the Court finds that any claims for injunctive relief are moot. *See McGrath v. Johnson*, 67 F. Supp. 2d 499, 507 (E.D. Pa. 1999), *aff'd*, 35 F. App'x 357 (3d Cir. 2002) ("[W]hen a prisoner is transferred, his claims regarding certain conditions existing at one facility *may* become moot.") (citing *McPherson v. Coombe*, 992 F. Supp. 229, 232 (W.D.N.Y. 1997) ("Plaintiff, who is now incarcerated at another facility, is not in imminent danger of irreparable harm from conditions that may exist at Attica and his claim is therefore moot.")). Without an existing claim for injunctive relief, Mr. Brown cannot bypass sovereign immunity and sue the defendants in their official capacities.

right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (quoting *Nicini v. Morra,* 212 F.3d 798, 806 (3d Cir. 2000)). Here, the gravamen of Mr. Brown's Section 1983 claims against PA Nicholson is one of deliberate indifference to his medical needs. As to CHCA Laws-Smith and Superintendent Lamas, Mr. Brown alleges only that they denied his related grievance and appeal, respectively. The Court first addresses Mr. Brown's allegations against PA Nicholson, followed by those against CHCA Laws-Smith and Superintendent Lamas.

### A. Mr. Brown's Allegations Against PA Nicholson

The Eighth and Fourteenth Amendments entitle an inmate in a correctional facility to receive necessary medical care for serious medical conditions. *See Estelle,* 429 U.S. at 104. To make out a violation of the Eighth Amendment, *Estelle* requires a showing of "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106.

A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. *Estelle,* 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude

8

in the diagnosis and treatment of prisoners." *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1990) (citations omitted); *see also White v. Napoleon*, 897 F.2d 103, 113 (3d Cir. 1990) ("[T]he judgment of prison authorities will be presumed valid unless it is shown to be such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such judgment.").

Mr. Brown's allegations, taken as true, cannot rise to the level of deliberate indifference. Mr. Brown claims that after he himself raised the concern that a bullet might be pushing out of his back, PA Nicholson numbed his back, cut into the lump, felt around, checked that Mr. Brown could not feel anything, and—not feeling any bullets—stitched the cut shut. PA Nicholson allegedly said that the lump could be a lipoma, but he was not sure, and he sent Mr. Brown back to his block without any pain medication. In his grievance related to his treatment, Mr. Brown also complains that neither PA Nicholson nor any of the nurses watching the procedure wore masks or other surgical gear, and the room was not sterilized. Further, he states that PA Nicholson should have performed an ultrasound, x-ray, or biopsy before cutting into the lump.

None of these facts allege that PA Nicholson acted outside of accepted professional judgment, "was aware of [Mr. Brown's] need for medical treatment but intentionally refused to provide it," or "prevented [Mr. Brown] from receiving needed or recommended treatment."[2] *Saunders v. GEO Grp., Inc.*, No. 19-2322, 2019 WL 5558659, at *2 (E.D. Pa. Oct. 25, 2019). At most, Mr. Brown's allegations amount to a claim of negligence. *See, e.g., Bryant v. Kaskie*, 744 F. App'x 39, 42 (3d Cir. 2018) ("We agree with the District Court that [the nurse practitioner's]

---

[2] In the grievance and related appeal documents attached to his complaint, Mr. Brown asserts that he went to SCI-Chester's medical department several times after PA Nicholson performed the procedure but was turned away and not given any medication for his pain. However, nowhere in those documents or the complaint itself does Mr. Brown allege that it was PA Nicholson who turned him away or prevented him from being seen. Mr. Brown's allegations as to PA Nicholson relate only to his diagnosis and procedure.

alleged failure to inform Bryant of the potential side effects of Risperidone is insufficient to demonstrate deliberate indifference. Even if this allegation could rise to the level of negligence, simple negligence cannot support an Eighth Amendment claim."); *Rhines v. Bledsoe*, 388 F. App'x 225, 227 (3d Cir. 2010) ("Moreover, [the plaintiff's] disagreement about his course of treatment, namely, that an MRI should have been immediately ordered, does not demonstrate the defendants were deliberately indifferent to his medical needs."); *Talbert v. Corr. Dental Assocs.*, No. 18-5112, 2019 WL 4415763, at *6 (E.D. Pa. Sept. 16, 2019) ("While [the plaintiff] may disagree about Physician Assistant Shellenberger's decision to discontinue his Flexeril and Imodium prescriptions, and her course of treatment regarding his high cholesterol and triglycerides, he does not allege facts of Physician Assistant Shellenberger intentionally or recklessly discontinuing his prescriptions or failing to treat his medical conditions."); *McGinnis v. Hammer*, No. 15-398, 2017 WL 4286420, at *9 (W.D. Pa. July 28, 2017) ("Even if [Physician's Assistant] Hammer could be considered negligent in assessing ligament strain instead of tendonitis, in failing to conduct a physical examination of Plaintiff's knee, in declining to order diagnostic tests, or in failing to initially provide ameliorative measures such as a knee brace, an ace wrap, or crutches, such malfeasance would be insufficient to state an Eighth Amendment violation."), *report and recommendation adopted*, No. 15-398, 2017 WL 4236063 (W.D. Pa. Sept. 25, 2017), *aff'd*, 751 F. App'x 287 (3d Cir. 2018). It is well established that mere negligence cannot support a claim for deliberate indifference. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) ("Allegations of medical malpractice are not sufficient to establish a Constitutional violation.") (citing *White*, 897 F.2d at 108–09); *see also Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) ("Courts will 'disavow any attempt to second-guess the propriety or adequacy of a particular

course of treatment . . . (which) remains a question of sound professional judgment.'") (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)).

Because Mr. Brown has failed to allege facts that can support a claim of deliberate indifference against PA Nicholson, the Court dismisses his Section 1983 claim against PA Nicholson in his individual capacity without prejudice.

### B. Mr. Brown's Allegations Against CHCA Laws-Smith and Superintendent Lamas

Mr. Brown alleges that CHCA Laws-Smith denied his grievance on February 14, 2017, stating that he had received appropriate medical attention for his reported complaint. Mr. Brown appealed that decision on February 17, 2017. On April 10, 2017, Superintendent Lamas upheld the denial of Mr. Brown's grievance.

"The failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." *Gordon v. Vaughn*, No. 99-1511, 1999 WL 305240, at *2 (E.D. Pa. May 12, 1999) (citations omitted). This is because "a state grievance procedure does not confer any substantive constitutional right upon prison inmates." *Hoover v. Watson*, 886 F. Supp. 410, 418 (D. Del.) (citations omitted), *aff'd*, 74 F.3d 1226 (3d Cir. 1995); *see also Anderson v. Pennsylvania*, 196 F. App'x 115, 117 (3d Cir. 2006) (per curiam) (stating that inmates "do[] not have a liberty interest protected by the due process clause in the inmate grievance procedures"). "Thus, if the state elects to provide a grievance mechanism, violations of its procedures do not give rise to a § 1983 claim." *Hoover*, 886 F. Supp. at 418–49 (citations and internal quotation marks omitted).

Further, to state a claim under Section 1983, "a plaintiff must demonstrate a defendant's 'personal involvement in the alleged wrongs.'" *Chavarriaga*, 806 F.3d at 222 (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). "A plaintiff makes sufficient allegations of a

11

defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." *Id.*

Here, Mr. Brown alleges only that CHCA Laws-Smith denied his grievance and Superintendent Lamas upheld the denial. Nowhere in his complaint or in the exhibits thereto does he reference any other involvement of either defendant. Their denials of his grievance and appeal do not give rise to a constitutional violation, and Mr. Brown has failed to allege any other personal involvement. Accordingly, Mr. Brown's Section 1983 claims against CHCA Laws-Smith and Superintendent Lamas fail. *See Rhines*, 388 F. App'x at 227 ("[T]he District Court properly denied the claims against defendants Warden Bledsoe and former Warden Williamson, because they are premised on a theory of respondeat superior. Neither defendant—aside from Williamson's denial of Rhines' administrative remedy in 2007—was personally involved in his medical care or treatment, and thus neither can be liable for an alleged civil rights violation.") (citing *Rode*, 845 F.2d at 1207); *Brown v. Wetzel*, No. 13-5469, 2014 WL 5493244, at *4 (E.D. Pa. Oct. 29, 2014) ("Plaintiff has alleged no such personal involvement by [the defendant], but rather relies solely on [his] position as the head of the health care unit at the prison, and imputes the alleged inadequate treatment to him. For the reasons set forth above, such allegations are insufficient to establish § 1983 liability."); *Robinson v. Prison Health Servs., Inc.*, No. 10-7165, 2014 WL 2452132, at *6 (E.D. Pa. June 2, 2014) ("The denial of a grievance or mere concurrence in an administrative appeal process is insufficient to establish personal involvement.") (citing *Goodwine v. Keller*, No. 09-1592, 2012 WL 4482793, at *8 (W.D. Pa. Sept. 26, 2012)).

Because Mr. Brown has failed to state a claim under Section 1983 against CHCA Laws-Smith and Superintendent Lamas, the Court dismisses his Section 1983 claims against them in their individual capacities without prejudice.

## Conclusion

The Court grants the defendants' motions to dismiss. An appropriate order, which recognizes that Mr. Brown may file an amended complaint,[3] follows.

BY THE COURT:

*/s/ Gene E.K. Pratter*

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[3] The Court notes that if Mr. Brown chooses to file an amended complaint, an "amended complaint supersedes the [preceding complaint] and renders [the preceding complaint] of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading." *West Run Student Housing Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013) (internal quotations omitted).